UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| FRANCES M. VALLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-388-PLR-HBG |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Frances M. Valle ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On September 21, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began July 1, 2011. [Tr. 233]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 110]. On January 16, 2014, a hearing was held before the ALJ to review determination of the Plaintiff's claim. [Tr. 59-90]. On February 10, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 39-57]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this

Court on August 28, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I. **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: rheumatoid arthritis, depression, and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only occasionally balance, crawl, stoop, kneel, crouch, or climb ramps or stairs. She can never climb ladders, ropes or scaffolds. Additionally, the claimant can only occasionally reach in all directions with her bilateral extremities. She should avoid all exposure to unprotected heights and hazardous machinery. Finally, the claimant is capable of tasks with a specific vocational preparation (SVP) of one through four, or unskilled and semi-skilled tasks.
>
> 6. The claimant is capable of performing past relevant work as a medical administrative assistant and transcription coordinator. This work does not require the performance of wok-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from July, 1 2011, through the date of this decision (20CFR 404.1520(f)).

[Tr. 44-52].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is

3

suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a

4

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the Plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

5

## IV. POSITIONS OF THE PARTIES

The Plaintiff raises two allegations of error. First, she argues that the ALJ erred by failing to give controlling weight to the opinions offered by treating physicians Nguyet-Anh T. Tran, M.D., and Susan Dowdy, M.D. [Doc. 19 at 10-16]. The Plaintiff contends that the ALJ erred by failing to assign Dr. Tran's opinion a specific weight or provide a reasoned explanation for rejecting his assessment, particularly with regard to the Plaintiff's need for frequent breaks. [Id. at 12-14]. The Plaintiff also avers that the ALJ failed to recognize Dr. Dowdy as a treating physician and weigh her opinion accordingly. [Id. at 15-16]. Second, the Plaintiff argues that the ALJ's step four finding that the Plaintiff has past relevant work, as well as the ALJ's step five finding that the Plaintiff can alternatively perform other jobs in the national economy, are not supported by substantial evidence. [Doc. 19 at 18-20].

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Dr. Tran's and Dr. Dowdy's opinion. [Doc. 21 at 4-16]. As to Dr. Tran, the Commissioner maintains that the ALJ's discussion makes clear that the opinion was afforded at least some weight, and perhaps even great weight, and that the ALJ explained which portion of Dr. Tran's opinion was not given any weight and why. [Id. at 10-11]. With regard to Dr. Dowdy, the Commissioner contends that the ALJ recognized Dr. Dowdy as a treating source but properly discounted her opinion because it was based upon impairments Dr. Dowdy did not treat. [Id. at 14]. Second, the Commissioner asserts that the ALJ properly relied on vocational expert ("VE") testimony to determine at steps four and five that the Plaintiff has past relevant work and can alternatively perform other jobs in the national economy. [Doc. 21 at 16-20].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Physicians

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight to be given to the treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992

7

(6th Cir. 2007).

### *1. Nguyet-Anh Tran, M.D.*

Dr. Tran began treating the Plaintiff in August 2012 to help manage the Plaintiff's diagnosis of rheumatoid arthritis. In June and July 2013, Dr. Tran completed a "Medical Questionnaire," wherein he opined that the Plaintiff was not capable of sustaining full-time employment until her arthritis was better controlled. [Tr. 677]. Dr. Tran explained that the Plaintiff's impairment caused prolonged morning stiffness, pain, and swelling of joints, which in turn caused the Plaintiff the need to take breaks once every hour for 10 to 15 minutes. [Id.].

Dr. Tran also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." [Tr. 678-83]. Based upon Dr. Tran's clinical findings and the Plaintiff's reported activity, Dr. Tran opined the following functional limitations: she could occasionally lift and carry up to 20 pounds; she could sit, stand, or walk three to four hours total for each activity during an eight-hour workday so long as she took a break every hour to stretch; she could occasionally reach, handle, finger, feel, and push or pull with both hands; she could occasionally use both feet to operate foot controls; she could occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders or scaffolds; and she could occasionally be exposed to different environmental conditions, except unprotected heights or moving mechanical parts. [Id. at 678-82].

The ALJ discussed Dr. Tran's treatment notes in some detail, observing that while the Plaintiff was frequently treated for flare-ups of her rheumatoid arthritis, "even when she experiences a flare, her symptoms are not so severe as to limit her abilities as significantly as alleged." [Tr. 48]. Dr. Tran's examination findings typically demonstrated mild to moderate symptoms. The Plaintiff responded well to medication and often reported improvement during

8

follow-up appointments. [Tr. 47-48]. The ALJ concluded that overall, Dr. Tran's findings were consistent with the Plaintiff's RFC. [Tr. 48]. Later in the decision, the ALJ "granted weight to the opinion of Dr. Tran," [Tr. 50], although he did not specify the exact amount of weight the opinion received. The ALJ noted that Dr. Tran is a specialist in his field, he had a longitudinal treating relationship with the Plaintiff, and that his opinion was generally consistent with his own findings. [Id.]. However, the ALJ "somewhat" modified the opinion because Dr. Tran had based part of his opinion upon the Plaintiff's reported activity level, and the ALJ found the Plaintiff was not "entirely credible." [Id.].

The Plaintiff argues that the ALJ's failure to assign a specific weight to Dr. Tran's opinion was error. The Court agrees. See Cole v. Astrue, 661 F.3d 931, 938 (6th Cir. 2011) (finding that the ALJ's failure to assigned a specific weight to a treating physician's opinion "alone constitutes error"). The Commissioner argues that while controlling weight was not assigned, it is clear from the ALJ's discussion that some, and possibly even great, weight was given. In comparing Dr. Tran's opinion with the Plaintiff's RFC, it appears that most, but not all, of the limitations Dr. Tran assessed are included in, or consistent with, the Plaintiff's RFC. Specifically, Dr. Tran also assessed the need for frequent breaks, as well as occasional fingering, handling, feeling, and pushing and pulling. These additional limitations may have a significant impact on the Plaintiff's ability to perform substantial gainful activity. See Soc. Sec. Rul. 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) ("As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases."); [Tr. 88] (VE explaining that employers will not tolerate excessive breaks). Therefore, the Court is unable to definitively determine how much weight was actually assigned to Dr. Tran's opinion. Some weight is not the same as great

9

weight. The ALJ alone is charged with weighing the evidence, and the Court declines to speculate the level of deference the ALJ intended to give Dr. Tran.

Perhaps even more problematic to the assessment of Dr. Tran's opinion is the ALJ's explanation for modifying it, as argued by the Plaintiff. First, the ALJ does not explain what part of the opinion was actually modified. The most glaring portion of Dr. Tran's opinion that was not adopted by the ALJ appears to be Dr. Tran's assessment that the Plaintiff would need hourly breaks and had additional limitations with her hands. However, the ALJ's decision does not explicitly indicate this. Instead, the reviewer must conduct a comparative analysis to determine what portions of the opinion are not included or inconsistent with the Plaintiff's RFC.

Second, the reviewer is left to guess why the ALJ modified the opinion. The ALJ states that he modified the opinion because some of the limitations were based on the Plaintiff's subjective allegations. However, it is unclear why the Plaintiff was not found to be entirely credible. The ALJ's discussion leading up to this particular finding does not include a credibility determination, but only a summarization of the medical evidence which is insufficient for the Court to determine why the ALJ felt it was necessary to "somewhat" depart from Dr. Tran's opinion. See Kennedy v. Comm'r of Soc. Sec., 965 F. Supp. 2d 937, 943 (E.D. Tenn. 2013) (finding that even if the court were to liberally construe the ALJ's discussion of the plaintiff's medical history as reasons for discounting the treating source's opinion, "such statements appear to be made not in the context of evaluating a treating physician's opinion for controlling weight but rather regarding claimant's allegations of disability generally"). Additionally, *all* of the limitations assessed by Dr. Tran were based upon his clinical findings *and* the Plaintiff's reported activity level. Assuming, without deciding, that the modified portion of Dr. Tran's opinion was the need for frequent breaks and occasional use of the hands, there is no explanation

10

why these particular restrictions were excluded when all the limitations assessed were based on the Plaintiff's reported activities.

Accordingly, the Court finds that the ALJ erred by failing to specify the weight assigned to Dr. Tran's opinion and provide "good reasons" for that weight. Nonetheless, a violation of the "good reasons" rule can be deemed "harmless error" if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possible credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. Apr. 28, 2010) (citation omitted). However, the Court finds that none of these exceptions apply here. Therefore, the Court will recommend that the case be remanded to the ALJ for clarification of the weight accorded to the opinion of Dr. Tran and the reasons for according such weight pursuant to 20 C.F.R. § 404.1527(c)(2).

### 2. Susan Dowdy, M.D.

Dr. Dowdy became the Plaintiff's primary care physician in February 2013. [Tr. 753]. Dr. Dowdy primarily treated the Plaintiff for severe depression. [Tr. 753, 759]. While treatment notes routinely discussed the Plaintiff's rheumatoid arthritis, Dr. Dowdy deferred to Dr. Tran in treating the Plaintiff's impairment. [Tr. 614, 618, 706, 714, 753, 759].

On August 12, 2013, Dr. Dowdy completed a "Medical Questionnaire" and "Medical Source Statement of Ability to do Work-Related Activities (Physical)." [Tr. 738-46]. Dr. Dowdy noted that the Plaintiff's diagnoses included depression and rheumatoid arthritis, which precluded the Plaintiff from maintaining full-time employment as the Plaintiff's depression made

11

it difficult to get out of bed, care for herself, and affected her memory, concentration, and motivation, while the Plaintiff's rheumatoid arthritis caused joint stiffness, pain, swelling, and deformities in the arm. [Tr. 739]. Dr. Dowdy then assessed similar functional limitations as Dr. Tran, except that the Plaintiff could only sit, stand, and walk for three hours each in an eight-hour day and could never operate a motor vehicle. [Tr. 741, 744]. Dr. Dowdy assessed these limitations based upon the Plaintiff's rheumatoid arthritis and an inability to walk on her heels and toes during an examination. [Id.]. Also opposite to Dr. Tran's opinion, Dr. Dowdy found that the Plaintiff could not perform a variety of daily living activities such as shop, travel, walk a block or climb a few steps at a reasonable place, use standard public transportation, or prepare simple meals. [Tr. 745]. Dr. Dowdy explained that the Plaintiff's anxiety and problems with memory and concentration made it difficult to perform these activities. [Id.].

The ALJ observed that during regular check-ups throughout 2013, Dr. Dowdy had noted that the Plaintiff demonstrated normal memory, mood, affect, and was alert and oriented. [Tr. 48-49]. In August 2013, however, the Plaintiff reported a worsening of her depression as she was noted to cry frequently during appointments. [Tr. 49]. The ALJ observed that despite a reported decrease in motivation, the Plaintiff was able to go to church, and Dr. Dowdy noted that the Plaintiff exhibited normal behavior and memory. [Id.]. The ALJ concluded that the Plaintiff's "presentation during her depressive episodes indicates that she maintained the ability to perform at the assigned residual functional capacity." [Id.]. Later in the decision, the ALJ assigned "little weight to the opinions of Dr. Dowdy, the claimant's primary care doctor" because the opinion was based on the Plaintiff's rheumatoid arthritis, which Dr. Dowdy did not treat. [Tr. 50]. In addition, the ALJ found that the limitations regarding the Plaintiff's depression and anxiety were overly restrictive given Dr. Dowdy's clinical impression, as well as

12

other record evidence including the opinions rendered by a consultative examiner and non-examining state agency physician in addition to the Plaintiff's own reports of her abilities. [Id.].

The Plaintiff argues that the ALJ's erroneous conclusion that Dr. Dowdy did not treat the Plaintiff's physical condition is tantamount to the ALJ rejecting "Dr. Dowdy's opinion due to Dr. Dowdy not being a 'treating physician.'" [Doc. 19 at 15]. The Court finds no merit in the Plaintiff's contention. The ALJ recognized Dr. Dowdy was a treating source by observing she was the Plaintiff's primary care physician. The ALJ correctly noted, however, that Dr. Dowdy did not treat the Plaintiff for rheumatoid arthritis as Dr. Dowdy's treatment records repeatedly note that the Plaintiff was seen and treated by Dr. Tran for this impairment. [Tr. 614, 618, 706, 714, 753, 759]. The ALJ's observation on this point in no way ignores the fact that Dr. Dowdy was a treating physician who's opinion, as a general matter, is deserving of controlling weight. The ALJ, however, may consider the treatment actually rendered by Dr. Dowdy with regard to the Plaintiff's rheumatoid arthritis and the limitations Dr. Dowdy assessed based upon that particular impairment. See 20 C.F.R. § 404.1527(c)(2)(ii) (explaining that a treating source's opinion is deserving of more weight "[w]hen the treating source has reasonable knowledge of your impairment(s)"); Mullins v. Colvin, No. 3:14-CV-352-PLR-CCS, 2015 WL 4095533, at *8 (E.D. Tenn. July 7, 2015) (observing that because the claimant's treating physician did not treat the claimant's degenerative disc disease, the extent of the treatment for this impairment was an appropriate factor in considering the weight the treating physician's opinion was due).

Moreover, the ALJ also discounted the opinion due to finding the Plaintiff's mental limitations less severe than opined by Dr. Dowdy. "The better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. §

13

404.1527(c)(3). In addition, "the more consistent an opinion is with the record as a whole, the more weight" the opinion will be entitled to. § 404.1527(c)(4). Here, the ALJ compared Dr. Dowdy's opinion with her own treatment notes, other opinion evidence, and the Plaintiff's statements in finding that the limitations assessed were far more restrictive than what was reflected by the evidence. The Plaintiff does not allege, and the Court has not found, any error on the ALJ's part in assessing the functional effects of the Plaintiff's mental impairments. Therefore, the Court finds that the ALJ's analysis of Dr. Dowdy's opinion satisfies agency regulation and is supported by substantial evidence.

Accordingly, the Court finds the Plaintiff's assignment of error in this regard is not well-taken.

**B. Steps Four and Five**

Next, the Plaintiff contends that the ALJ's step four finding – that the Plaintiff has past relevant work she can perform – was error, but that such error was harmless due to the ALJ making an alternative finding at step five. The Plaintiff argues, however, that the ALJ committed reversible error at step five because the alternative jobs identified by the ALJ cannot actually be performed by the Plaintiff, given her RFC.

At step four, the ALJ found that the Plaintiff "has past relevant work as a medical administrative assistant and transcription coordinator as identified by the vocational excerpt and consistent with Social Security Ruling 82-62." [Tr. 51]. Nonetheless, the ALJ continued the sequential evaluation, finding that although the Plaintiff had past relevant work, other jobs existed in the national economy she was also able to perform based upon the VE's testimony. [Id.]. In this regard, the ALJ found that given the Plaintiff's age, education, work experience, and RFC, she could also perform the jobs of document preparer and telemarketer as defined by

14

the Dictionary of Occupational Titles ("DOT"). [Tr. 52].

The Plaintiff argues that per the DOT's description, her past work as a medical administrative assistant and transcription coordinator require frequent reaching which conflicts with the ALJ's RFC determination limiting the Plaintiff to occasional reaching. [Doc. 19 at 18]. The Plaintiff further contends that "neither the ALJ nor the vocational expert provided an explanation as to why the Plaintiff's job performance deviates from the DOT." [Id.]. The Plaintiff concedes, however, that the ALJ's error was harmless since he continued the sequential evaluation and made an alternative finding at step five. [Id.].

The Commissioner argues that the DOT only provides generic job descriptions that offer approximate maximum requirements for each position and that VE testimony may offer more specific information which an ALJ may rely upon in determining what a claimant can and cannot do. [Doc. 21 at 18]. Thus, the Commissioner avers that the ALJ properly relied upon VE testimony in this case in determining that the Plaintiff could perform her past work. [Id.].

The Court observes that "the Sixth Circuit has rejected the argument that the ALJ is bound by the DOT's definition of occupations, holding that 'the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions.'" O'Neal v. Comm'r of Soc. Sec., No. 1:12-cv-246, 2013 WL 620377, at *7 (S.D. Ohio Feb. 19, 2013) (quoting Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003)); see Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (noting that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings"). Therefore, the Court finds that the ALJ in this case was not bound by the DOT in determining whether the Plaintiff had past relevant work.

15

However, "the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job . . . ." D'Angelo v. Comm'r of Soc. Sec., 475 F. Supp. 2d 716, 723 (W.D. Mich. 2007); see 20 C.F.R. § 404.1520(f) (explaining that "we will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work"). Social Security Ruling 82-62 explains that "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." 1982 WL 31386, at *3 (Jan. 1, 1982).

Here, while the ALJ was not required to find that the Plaintiff could perform her past work as described by the DOT, the ALJ was obligated to explain why the Plaintiff could perform her past work as she had actually performed it. The ALJ's decision fails to offer any insight as to why the Plaintiff's past work as a medical administrative assistant and transcription coordinator qualified as past relevant work under the regulations. The Commissioner cites to a portion of the administrative hearing where the Plaintiff purportedly testified about the requirements of her past work. [Doc. 21 at 16] (citing [Tr. 66-69]). This portion of the hearing transcript, however, is void of any description of the physical or mental demands of either job. [Tr. 66-69]. Moreover, later in the hearing when the ALJ begins to question the VE, the ALJ stated, without explanation, that he considered the Plaintiff's previous jobs as a medical administrative assistant and transcription coordinator past relevant work. [Tr. 84-85]. Additionally, when the ALJ asked the VE whether a hypothetical individual the same age, education, work experience and RFC as the Plaintiff could perform the Plaintiff's past work, the VE responded that the hypothetical person "could perform both jobs as performed, but not as described in the DOT." [Tr. 85-86]. There is nothing within the hearing transcript that explains why the VE found that the Plaintiff's past

16

work could be performed as she actually performed them.

The Commissioner points to the Plaintiff's Work History Report as evidence of how she performed her past work and that the Plaintiff's description of her work therein is consistent with her RFC. [Doc. 21 at 18-19] (citing [Tr. 255]). The problem with the Commissioner's line of reasoning is the ALJ's decision, as well as the administrative hearing, fails to explain *what* evidence was actually relied upon by the ALJ in not only determining that the Plaintiff had past relevant work, but also *why* the Plaintiff's previous work as a medical administrative assistant and transcription coordinator qualified as past relevant work. Therefore, the Court finds that the ALJ erred at step four. See O'Neal, No. 1:12-cv-246, 2013 WL 620377, at *7 (holding that in order for an ALJ's step four fining to be supported by substantial evidence, "the ALJ's decision must explain why the plaintiff can perform his past relevant work as actually performed").

When error is committed at step four, "the Commissioner's decision can be affirmed only if the ALJ also found in the alternative, with the support of substantial evidence, that Plaintiff was capable of making an adjustment to 'other work' existing in significant numbers in the national economy." Prater v. Astrue, No. 4:08-CV-83, 2010 WL 1257882, *9 (E.D. Tenn. Mar. 3, 2010) (internal citations omitted) (citing 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(1)).

Here, the Plaintiff argues that although the ALJ alternatively found that she could also perform the jobs of document preparer and telemarketer, the ALJ's finding is not supported by substantial evidence because the DOT's description of both jobs conflict with her RFC. [Doc. 19 at 20]. Specifically, the Plaintiff states that the DOT's description of document preparer requires frequent reaching which conflicts with the ALJ's RFC determination limiting the Plaintiff to only occasional reaching. [Id.]. In addition, the Plaintiff cites the DOT's description of telemarketer as requiring frequent handling and fingering which conflicts with Dr. Tran's and

17

Dr. Dowdy's opinion that the Plaintiff can only occasionally handle and finger. [Id.]. The Plaintiff asserts that the handling and fingering limitations assessed by both physicians were not addressed by the ALJ or the VE. [Id.].

The Commissioner responds that an ALJ may rely on the expertise of a VE in determining whether other work exists in the national economy that a claimant can perform, and that the hypothetical question presented to the VE need only include limitations the ALJ finds credible. [Doc. 21 at 19]. In this case, the Commissioner avers that the ALJ reasonably excluded the handling and fingering restrictions opined by Drs. Tran or Dowdy. [Id.].

Although the Commissioner is correct that "[h]ypothetical questions . . . need only to incorporate those limitations which the ALJ has accepted as credible," Parks v. Soc. Sec. Admin., 413 F. App'x 856, 865 (6th Cir. 2011), the Court finds that it cannot undertake a meaningful review of the issue at this time because the Court has found that the ALJ erred in evaluating Dr. Tran's opinion. Therefore, the Court cannot determine at this juncture whether the hypothetical question accurately sets forth the Plaintiff's physical limitations.

Given the Court's recommendation of remand, the Court will also recommend that the ALJ reevaluate whether the Plaintiff has past relevant work she can perform, and if so, explain in his decision why the Plaintiff can perform the past duties and demands of her work.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion for Summary Judgment [Docs. 18] be **GRANTED IN PART AND DENIED IN PART**, and the Defendant's Motion for Summary Judgment [**Doc. 20**] be **GRANTED IN PART AND DENIED IN PART**. Upon remand, the Court RECOMMENDS the following:

1. The ALJ shall reconsider Dr. Tran's opinion pursuant to 20 C.F.R. § 404.1527(c)(2), by assigning the opinion a specific weight and provide "good reason" for the weight assigned; and

2. The ALJ shall reexamine whether the Plaintiff has past relevant work she can perform, and to the extent that she does, the ALJ must explain why the Plaintiff is capable of performing the past duties and demands of her work.

Respectfully submitted,

*/s/ Bruce Guyton*
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

Case 3:15-cv-00388-PLR-HBG Document 23 Filed 07/27/16 Page 19 of 19 PageID #: 896